[Nos. 33263, 33264.  Department One.  March 29, 1956.]

ROBERT C. RODRUCK et al., *Appellants,* v. SAND POINT MAIN-
TENANCE COMMISSION, *Respondent,* JEAN TIPPERY
*et al., Appellants.*

JOHN W. BURKE *et al., Appellants,* v. SAND POINT MAINTE-
NANCE COMMISSION *et al., Respondents.*[1]

[1]Reported in 295 P. (2d) 714.

*Mary E. Burrus, Barbara E. Reardon,* and *Houghton, Cluck, Coughlin & Henry,* for appellants.

*Howe, Davis, Riese & Aiken* and *Daniel B. Allison,* for respondent Sand Point Maintenance Commission.

*A. C. Van Soelen* and *Glen E. Wilson,* for respondent city of Seattle.

SCHWELLENBACH, J.—This is an appeal from judgments entered in two cases consolidated for trial. Plaintiffs and interveners are owners of tracts in the plat of the residential district known as the Sand Point Country Club, located in Seattle. The district contains two hundred thirteen residential lots and is elliptical in shape. One street, located on property within the district, encircles the area, and several streets crisscross within the district to serve the property owners. There is no means of ingress or egress at the northern boundary. One may enter the residential area at three points at the southern boundary from east 75th street (a city thoroughfare running east and west south of the district).

In March of 1928, Samuel Hayes incorporated the Sand Point Country Club and conveyed all of the property in the residential district in question to it. December 28, 1928, he incorporated the Sand Point Maintenance Commission under the statute on charitable, social, and benevolent corporations. December 31, 1928, the Sand Point Country Club conveyed to the maintenance commission, in trust, strips of land which had been laid out in the subdivision for future use as streets, parking places, and bridle paths, called "easements of access", and also certain easements for water, sewage, and telephone utilities. The trust deed recited that the easements of access

"... are hereby conveyed in trust for the purpose of

improvement and maintenance for the private use and enjoyment, as ways of ingress and egress, parking place, and bridle path, of the following persons, to-wit: . . ."

The deed then listed certain classes of persons entitled to such use: members of the Sand Point Golf Club, the Sand Point Country Club, and the Sand Point Riding Club, owners of land in the vicinity "when brought under the provisions of the bylaws of the grantee," and owners of properties later acquired by the grantors.

In January of 1929, a Certificate of Survey and a Declaration of Restrictive Covenants were filed. In June of 1939, the bylaws of the commission were amended, as were the articles of incorporation, and an amended declaration of restrictive covenants was filed. At that time, the Sand Point Country Club was renamed the Hayes Investment Company. In 1942, different owners sold and conveyed lot 22 to plaintiff Burke, lot 198 to plaintiff Rodruck, and lot 202 to intervener Tippery. Each of the appellants, by virtue of his purchase, became a member of the maintenance commission, and such membership was still intact at the time of the institution of the actions now before us on appeal.

In May of 1951, the maintenance commission reorganized and amended its bylaws, and an amended certificate of incorporation was filed designating the commission as a nonprofit corporation. In January of 1953, the district was annexed to the city of Seattle.

The basic plan of operation of the commission is this. Each lot owner has one membership in the commission, which is appurtenant to the land owned. A board of trustees elected by the members maintains and improves, among other things, the streets in the district, and levies assessments against the members for the cost of these improvements and maintenance work. Unpaid assessments become a lien on the property and are foreclosable against the individual lots as in the case of mortgages.

Subsequent to the annexation, the city of Seattle levied against the *property of the commission* (streets, etc.) for the area's share of the cost of improving east 75th street,

and the commission in turn levied against the property of the members.

Plaintiff Rodruck in his complaint sought (1) an order declaring the corporate reorganization of 1951 void; and (2) an order declaring the corporation to have no power to levy assessments for the improvement of east 75th street. Tippery, as intervener in the Rodruck suit, sought (1) to have his title quieted as against the filed covenants and restrictions; (2) an adjudication that the streets in the district are public; and (3) an order declaring the amended articles of incorporation of 1951 to be of no effect. Plaintiff Burke sought (1) an order declaring his right to withdraw from membership in the commission; (2) an adjudication declaring that the streets in the area are public; (3) an adjudication that the purported covenants in the Declaration of Protective Restrictions, as amended, are void; and (4) an injunction enjoining the city of Seattle from taking further steps with regard to the levy of assessments against the area other than in accordance with the laws provided therefor.

Defendant commission cross-complained against plaintiff Rodruck and intervener Tippery, seeking judgment for unpaid assessments.

In the course of the trial, the court granted a motion for dismissal on the issue of the character of the streets and in its findings recited that the streets within the district are now and at all times have been private streets. The court entered judgment dismissing the complaints of plaintiffs and intervener and ordered recovery by defendant commission on its cross-complaint in the amounts prayed for.

It is contended that the trial court erred in finding that the streets within the area are private streets; in finding that no evidence was produced which permits the court to relieve appellants or their tracts from the obligations of membership in the maintenance commission; in entering decrees dismissing appellants' actions and in granting judgments against them with interest and costs, including attorneys' fees; in finding that the maintenance commission is duly organized under the laws of the state; in finding that

appellants Rodruck are barred by *res judicata* from questioning the rights of the commission to levy assessments and foreclose against them and their property; in finding that certain causes of action are barred by the statute of limitations; and in refusing to find that the commission has no power to levy assessments for the improvement of east 75th street.

In *Northwest Cities Gas Co. v. Western Fuel Co.*, 13 Wn. (2d) 75, 123 P. (2d) 771, we set out the following rules concerning public user:

"An easement of right of way across the land of another, including even the establishment of a public highway over private property, may be acquired by prescription."

"The period required in this state to establish such a prescriptive right of way is ten years."

"Prescriptive rights, however, are not favored in the law, since they necessarily work corresponding losses or forfeitures of the rights of other persons."

"When one enters into the possession of another's property there is a presumption that he does so with the true owner's permission and in subordination to the latter's title."

"A user which is permissive in its inception cannot ripen into a prescriptive right, no matter how long it may continue, unless there has been a distinct and positive assertion by the dominant owner of a right hostile to the owner of the servient estate."

"It is therefore essential that all of the elements necessary to constitute a permanent valid claim by adverse user amounting to a prescriptive right be shown to be present."

"The burden of proving a prescriptive right rests upon the one who is to be benefited by the establishment of such right."

"To establish a prescriptive right of way over the land of another person, the claimant of such right must prove that his use of the other's land has been open, notorious, continuous, uninterrupted, over a uniform route, adverse to the owner of the land sought to be subjected, and with the knowledge of such owner at a time when he was able in law to assert and enforce his rights."

"However, proof that the use by one of another's land has been open, notorious, continuous, uninterrupted, and for the required time, creates a *presumption* that the use was

*adverse,* unless otherwise explained, and, in that situation, in order to prevent another's acquisition of an easement by prescription, the burden is upon the owner of the servient estate to rebut the presumption by showing that the use was permissive."

There was testimony that no signs or barriers were placed on the streets; that the only time the streets were closed was during a snow storm; that members of the public have used the streets without interruption; that business firms would go into the tract to service homes; that there have been no restrictions as to persons or vehicles; that there was no difference as to the kind and nature of the traffic as compared to other areas of the city. However, much of the use by other than residents was by (1) sight-seers, (2) student drivers, (3) visitors of residents, (4) merchants, (5) salesmen, and (6) delivery people. The testimony concerning the use was general, rather than specific.

█ Appellants did not prove that the use of the streets by the public was "open, notorious, continuous, uninterrupted, and for the required time." No presumption arose, therefore, that the use was adverse. Furthermore, the area is elliptical in shape. One cannot drive through and get out on the other side. (In fact, it is surrounded by vacant land with the exception of that portion near 75th street.) A member of the public must enter from 75th street, and, to get out, must go back to 75th street. It is difficult under such circumstances to believe that any outsider had any idea that he was using these streets as a matter of right.

It may very well be that, because the area is now annexed to the city, with the improvement of 75th street, and with the development of that part of the city, the use of these streets by the public may in the future become adverse. We are satisfied, however, that appellants failed to prove that these are public streets at this time.

We will now consider the contention that the corporate reorganization of 1951 was invalid and the consequent amended articles of incorporation and bylaws void. The maintenance commission was orginally incorporated as a social club under chapter CLVIII of the Laws of 1895, p.

400. Its bylaws were amended in 1939, and on May 15, 1951, the commission was reorganized under RCW 24.04 as a nonprofit corporation. May 28, 1951, the secretary of state issued his certificate acknowledging the filing of the amended articles of incorporation.

Appellants assert that the meeting to reorganize was irregular in several respects, and further that under RCW 24.04.120 the commission was incapable of reorganizing as a nonprofit corporation. These assertions question the authority of the commission to act as a nonprofit corporation.

The commission, through its compliance with statutory procedure, the issuance of the certificate of reorganization, and its subsequent activity as a reorganized corporation, is at the least a *de facto* nonprofit corporation. Its authority to act as such cannot be questioned in this action. The appropriate proceeding is one in *quo warranto*. *Refsnes v. Myers,* 164 Wash. 205, 2 P. (2d) 656; *Sheffield Co. v. R. Hoe & Co.,* 173 Wash. 489, 23 P. (2d) 876; *State ex rel. York v. Board of County Com'rs. of Walla Walla County,* 28 Wn. (2d) 891, 184 P. (2d) 577, 172 A. L. R. 1001.

Conceding *arguendo* that the issue is properly raised, appellants are in no better position. RCW 24.04.120 is as follows:

"Any corporation heretofore formed under any law of this state, the purpose or purposes for the creation of which is such that it might have been formed and carry on business hereunder, may avail itself of the privileges and incur the liabilities prescribed by this chapter upon a majority vote of all the members to the effect that it desires to reorganize hereunder. . . ."

It is urged that the statute could not be complied with, for it refers to a "majority vote of all the members," and the maintenance commission as originally organized was a stock corporation, having stockholders and not members.

RCW 24.04.010, stating the purpose of a nonprofit corporation, states:

"Corporations may be formed under the provisions of this chapter for any lawful purpose except that of carrying on a business, trade, avocation, or profession for profit."

■ The purposes of the commission as originally incorporated, which included the maintenance and improvement of real property for streets and sidewalks, were lawful, and the commission was not organized to realize a profit. Thus, the purposes of its creation were such that it might originally have been formed as a nonprofit corporation under RCW 24.04. The requirement for reorganization is as to purpose, not similarity in structural organization. A valid reorganization may be effected by a majority vote of those comprising the corporation as originally incorporated whether they were originally designated as stockholders or members.

As to the regularity of the meeting and compliance with the requirement that a majority vote in favor of reorganization, the findings of the trial court in this respect are substantiated by the evidence.

In view of the above, we do not find it necessary to discuss the questions of laches and the statute of limitations, raised by appellants in their brief.

The commission under its articles of incorporation and bylaws had the right to assess its members for maintenance work and improvements to the streets, and the deeds from the Hayes Investment Company to appellants' predecessors in interest embodied a covenant running with the land in that respect, which is binding upon the appellants as subsequent grantees. Each of the certificates of title held by the appellants recites that it is subject to restrictions and reservations contained in the deed from the Hayes Investment Company to their predecessors in interest. Each of those deeds contain this statement:

"The said property is hereby conveyed subject to the provisions of the by-laws of said Sand Point Maintenance Commission, which is, as aforestated, a Washington corporation, with its principal place of business at Seattle, Washington, organized for the purpose, among others, of taking title, in trust, to and improving and maintaining certain properties constituting easements of access (including parking strips, parking areas and bridle path) the cost thereof, including installation and maintenance of water, sewerage, gas, electric light and power and telephone, and such other

service and service lines as may be deemed useful by said commission, to be assessed by it to and paid by the owners of tracts in said residential district, in the manner provided in the by-laws of said corporation. Said properties and areas are particularly described in certain deeds of conveyance from Sand Point Country Club and others to said Commission heretofore recorded and filed, respectively, in the offices of the Auditor and of the Registrar of Titles for said County, copies of which the Grantee acknowledges he has received and read; and there has been issued to the Grantee one share of stock in said corporation, which said share shall be inseparably appurtenant to the tract hereby conveyed, and said tract and each portion thereof and undivided interest therein (if at any time so comprised), shall be subject to the lien of such assessments, and the owner thereof liable therefor, as shall be levied from time to time by said Commission under and in accordance with its by-laws and any amendments thereof, which assessments shall be superior to any and all other liens created and permitted by the Grantee, his heirs, personal representatives and assigns, except as otherwise may be provided by said Commission; and the Grantee, for himself, his heirs, personal representatives and assigns, by the acceptance of this deed, binds himself and his heirs, personal representatives and assigns, to all of the provisions, restrictions, conditions and regulations now or hereafter imposed by the by-laws of said Commission, and any amendments thereof, all of which shall constitute covenants running with the land."

█ In order that a covenant might be said to run with the land, it is essential that the promise "touch" or "concern" the land. Clark, Covenants and Interests Running With Land (2d ed.) 94.

In *Seattle v. Fender,* 42 Wn. (2d) 213, 254 P. (2d) 470, we quoted with approval from *Pelser v. Gingold,* 214 Minn. 281, 8 N. W. (2d) 36:

"A covenant is said to run with the land when it touches or concerns the land granted or demised. Generally speaking, a covenant touches or concerns the land if it is such as to benefit the grantor or the lessor, or the grantee or lessee, as the case may be. As the term implies, the covenant must concern the occupation or enjoyment of the land granted or demised and the liability to perform it, and the right to take advantage of it must pass to the assignee. Conversely, if the covenant does not touch or concern the occupation or enjoy-

ment of the land, it is the collateral and personal obligation of the grantor or lessor and does not run with the land."

The main consideration in deciding whether covenants run with the land appears to be whether the covenant in question is so related to the land as to enhance its value and confer a benefit upon it.

█ Specifically, a covenant creating a lien against the land for the expense of repairs, or for dividing the expense of repairs, may run with the land and follow it into the hands of subsequent purchasers. 21 C.J.S. 932, Covenants, § 73.

In *Neponsit Property Owners' Ass'n v. Emigrant Industrial Sav. Bank,* 278 N. Y. 248, 15 N. E. (2d) 793, 118 A. L. R. 973, the association sought to foreclose a lien upon land owned by the defendant. The lien claim was based upon a covenant in the deed from the association's assignor to defendant's predecessor in interest. Defendant's deed conveyed the property to him subject to the covenant contained in the original deed. That covenant was intended to create a charge or obligation to pay a fixed sum of money to be "devoted to the maintenance of the roads, paths, parks, beach, sewers, and such other public purposes as shall from time to time be determined by the party of the first part (the grantor), its successors, or assigns." The court determined that the covenant to pay money for use in connection with but not upon the land subject to the burden of the covenant "touched" or "concerned" the land.

The court said:

"Thus, unless we exalt technical form over substance, the distinction between covenants which run with land and covenants which are personal, must depend upon the effect of the covenant on the legal rights which otherwise would flow from ownership of land and which are connected with the land. The problem then is: Does the covenant in purpose and effect *substantially* alter these rights?

". . .

"Looking at the problem presented in this case from the same point of view and stressing the intent and substantial effect of the covenant rather than its form, it seems clear that the covenant may properly be said to touch and concern the land of the defendant and its burden should run with

the land. True, it calls for payment of a sum of money to be expended for 'public purposes' upon land other than the land conveyed by Neponsit Realty Company to plaintiff's predecessor in title. By that conveyance the grantee, however, obtained not only title to particular lots, but an easement or right of common enjoyment with other property owners in roads, beaches, public parks or spaces and improvements in the same tract. For full enjoyment in common by the defendant and other property owners of these easements or rights, the roads and public places must be maintained. In order that the burden of maintaining public improvements should rest upon the land benefited by the improvements, the grantor exacted from the grantee of the land with its appurtenant easement or right of enjoyment a covenant that the burden of paying the cost should be inseparably attached to the land which enjoys the benefit. It is plain that any distinction or definition which would exclude such a covenant from the classification of covenants which 'touch' or 'concern' the land would be based on form and not on substance."

■ The covenant in question in substance concerns the enjoyment and value of the land demised to appellants, and the reasoning of the *Neponsit* case is applicable. The appellants, by taking ownership of the land, obtained a right of common enjoyment with the other property owners in the streets. The covenant attached the burden of paying a share of the cost of maintaining the streets to the land enjoying the benefit. In purpose and effect, it substantially altered the rights connected with the land conveyed.

Under the covenant, the maintenance commission is obliged to maintain and repair the streets. Performance on the part of the commission has and will inure to the benefit of appellants' property. Appellants, as property owners, enjoy the roads as maintained by the commission. The assessments for maintenance and repair "touch" or "concern" the land. See *Lawrence Park Realty Co. v. Crichton*, 218 App. Div. 374, 218 N. Y. S. 278; followed in *Kennilwood Owners' Ass'n v. Jaybro Realty & Development Co.*, 156 Misc. 604, 281 N. Y. S. 541.

■ It is asserted that the Hayes Investment Company deeds and the bylaws of the commission are too indefinite

to fulfill the requirements of a covenant or promise; that there is no fixed limit to the amount that may be charged and no standard to guide the board of trustees in making the assessments.

The articles of incorporation, bylaws, and deeds are correlated documents. See *Evans v. Southside Place Park Ass'n,* (Texas Civ. App. 1941) 154 S. W. (2d) 914, where such instruments were so considered.

Both the original articles and bylaws and the amended articles and bylaws included, among the corporate purposes and powers, the maintenance and improvement of the streets, alleys, sidewalks, etc. It was for the commission as trustee, through its board of trustees, to determine what work was to be done in maintaining and improving the streets and what charge would be made against the members for such work. The right to demand payment of the charges levied carried with it an obligation on the part of the commission to exercise the discretion vested in it fairly and within the scope of the corporate functions outlined in its charter and bylaws. Appellants, as members of the commission and subsequent grantees under the Hayes Investment Company deeds, are bound by a sound exercise of that discretion. Members may attack assessments deemed to be unreasonable and the result of an abuse of discretion, but the plan of operation does not fail in its entirety merely because such discretion has been vested in the commission. The *scope* of the work to be done is discretionary; the *amounts* of the individual assessments are governed by a set standard,

" . . . according as the area of such tract bears to the entire area of the tracts assessed, that is, on the square footage basis, and without reference to the value of the front footage thereof; . . ."

*Nassau County v. Kensington Ass'n,* 21 N. Y. S. (2d) 208, relied upon by appellants, is not in point. In that case, certain property was laid out as a residential area. An association was formed, made up of the property owners in the district, for the common welfare of its members. Deeds

taken by parties buying property in the district contained this covenant: " 'And the said parties of the second part agree to pay to the Kensington Association five dollars per year for each lot in the property hereby conveyed; said payments to be binding on any subsequent owners of the said lots.' " The court ruled that the covenant did not run with the land and emphasized that the association was not committed by the terms of the covenant to use the funds collected for any particular purpose or in fact to spend the money at all.

We are not faced with the same situation. The covenant in the Hayes deed clearly states the purposes for which the funds realized through assessments are to be collected and spent, and the commission is obliged thereby to spend such funds for those designated purposes.

In this instance, as has been noted, the maintenance and repair of the enumerated facilities is designated in the commission's charter as a purpose of the formation of the commission. Appellants, as members of the commission, were bound by provisions therein commensurate with promotion of the corporate objects. The bylaws, in effect, constitute a contract between the commission and its members. *Seattle Trust Co. v. Pitner,* 18 Wash. 401, 51 Pac. 1048; *Child v. Idaho Hewer Mines,* 155 Wash. 280, 284 Pac. 80.

Appellants assert further that to recognize the power of assessment, as recited in the deeds to their grantors and incorporated by reference in their deeds, would result in allowing a change or modification of the filed restrictions without complying with the procedure set forth for that purpose.

Reliance is had upon *Van Deusen v. Ruth,* 343 Mo. 1096, 125 S. W. (2d) 1. In that case, restrictions were filed applicable to a certain real-estate subdivision. It was provided therein that the restrictions could be modified or amended by following a definite procedure set out in the instrument. Thereafter, in compliance with that procedure, an instrument was filed purporting to prohibit the erection of commercial buildings which had been permitted under the

original restrictions. The court canceled the second instrument.

There, the attempted modification and amendment destroyed in part the subject matter of the restrictions then in effect. New and additional burdens resulted from the deletion enforced in the instrument of modification. The restrictions of record in this case make no mention of the power of assessment. The power to assess is in no way connected with the filed restrictions. The latter are not denominated as exclusive, and we do not consider them as being so. Each of the restrictions remained in full force and effect as within the contemplation of the instrument as filed.

In view of what has already been said herein, a discussion of the trial court's finding that plaintiff Rodruck was barred by the doctrine of *res judicata* is rendered unnecessary.

Error is assigned to the trial court's ruling sustaining the commission's assessment for its share of the expenses for the improvement of east 75th street by the city of Seattle. Appellants are bound by the following finding of fact, which was neither referred to nor set out in their brief:

"With respect to plaintiffs' and intervenors' allegations that defendant is expending funds for the improvement of East 75th Street, the court finds plaintiffs and intervenors have failed to prove any allegation in connection therewith, and further finds that the defendant has never undertaken the improvement of East 75th Street and has not undertaken to assess the plaintiffs or intervenors, or any other members of defendant corporation, for the improvement thereof, except to the extent necessary to defray the actual cost of assessments levied or to be levied against real property belonging to defendant and subject to assessment by the City of Seattle in connection with the paving of East 75th Street by the City of Seattle."

An estimate was obtained from the city of its proposed assessment of the commission's property for benefits received by reason of the paving, and the commission assessed its members in an amount to meet the city's assessment. The payment of assessment against property owned by the commission is expressly authorized by article VII, section

8, of the bylaws, as amended April 2, 1951. Furthermore, article XI, section 1, provides that owners shall be subject to assessment by the commission for various objects and purposes, "including taxes (and assessments if and when levied by any municipal corporation)." Failure to pay the city would result in a foreclosure against the commission's property held in trust for the members.

We therefore do not believe that the question of whether or not the city of Seattle has complied with the Washington statutes applicable to levying assessments for local improvements is properly before us.

■ As to the issue of withdrawal of membership, appellants Burke seek to effect a withdrawal which would relieve their property, as well as themselves, of the responsibilities attached to membership in the commission.

RCW 24.04.040, dealing with termination of membership in a nonprofit corporation is as follows:

"A membership in a corporation formed hereunder may be terminated by voluntary withdrawal, by expulsion, or by death. Loss of membership through any such causes and the incidents thereof shall be governed by the bylaws of the company."

Article III, section 4 of the bylaws, as amended April 2, 1951, provides:

"No membership shall be forfeited nor member be expelled except upon foreclosure for non-payment of assessments or purchase of land by the Commission in lieu of foreclosure as elsewhere in these By-Laws provided, and no member may withdraw except upon transfer of title to the real property to which his membership is appurtenant, as elsewhere herein provided. . . ."

The statute directs us to the commission's bylaws. We will not interfere with the right of the commission to govern the incidents of membership therein.

The assessments now due and owing to the commission were levied in accordance with authority vested in that body. They are binding obligations as against appellants and the property to which they hold title in the Sand Point

district. The amounts due have been established by the evidence in the sums found by the trial court.

The judgments are affirmed.

HAMLEY, C. J., DONWORTH, FINLEY, and OTT, JJ., concur.

June 4, 1956. Petition for rehearing denied.

