[No. 36901-6-I. Division One. April 14, 1997.]

JOHN F. ACKERMAN, ET AL., *Plaintiffs*, KATHERINE YURICA, *Appellant*, v. SUDDEN VALLEY COMMUNITY ASSOCIATION, *Defendant*, GILBERT A. JONES, *Respondent*.

*Katherine Yurica*, pro se.

*Philip E. Sharpe, Jr.*, of *Adelstein, Sharpe & Serka*; and *Patrick Lakey* of *Raas, Johnsen & Stuen, P.S.*, for respondent.

ALLENDOERFER, J.* — In this case we are asked to review the governing documents of the Sudden Valley Community Association (SVCA) to determine whether the documents, as written, permit the implementation of a dues structure that differentially assesses association members based upon whether or not a member's lot is improved or unimproved. We affirm the trial court and hold that a multi-tiered dues

*Judge James H. Allendoerfer is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

dues structure is conceptually permissible under the Covenants, provided that it is implemented equitably. We reverse the trial court, however, on the related issue of whether such a dues structure is permissible under the Articles of Incorporation. Whereas the trial court found that differential assessments impermissibly create two classes of members, we find no such conceptual connection, and hold that a multi-tiered dues structure is permissible without the necessity of amending any governing documents.

## FACTS

Sudden Valley began in the early 1970s as a recreational and residential development. SVCA is a nonprofit corporation charged by the governing documents with responsibility for maintaining the common properties and facilities, which it holds in trust for the benefit of all lot owners. All lot owners are voting members of SVCA.

In 1994 the Board of Directors of SVCA proposed an amended dues structure under which the owners of improved lots would pay annual dues of $475, and the owners of unimproved lots would pay $340.[1] Three lot owners filed suit to prevent SVCA from holding an election of its members to approve this proposed change. The owners' motions for preliminary injunctive relief were denied. The dues proposal was then approved by the membership by a 71 percent majority vote.

In August 1994 the trial court granted another owner, Katherine Yurica, appellant herein, leave to intervene. In September 1994 the owners and Yurica filed amended complaints seeking a declaratory ruling that the two-tiered dues structure (as approved by the membership) violated the Covenants and Articles of Incorporation of SVCA, and seeking a permanent injunction against the two-tiered dues

---

[1]According to the General Manager of SVCA, the differential was justified on the grounds of fundamental fairness: owners with improved lots have a greater impact on SVCA facilities and receive a higher level of service than owners of unimproved lots, and should therefore pay higher assessments.

structure and a decree invalidating any assessments made thereunder.

On December 1, 1994, Yurica filed a motion for summary judgment against SVCA. On December 6, 1994, the claims of the other owner-plaintiffs were voluntarily dismissed with prejudice, but the claims of Yurica remained. SVCA filed a cross-motion for summary judgment against Yurica.

On January 13, 1995, the trial court granted Yurica's motion for summary judgment "to the extent that the court finds that SVCA's Articles of Incorporation require that dues be assessed equally against all lot and condominium owners." In his oral decision, the judge found that a two-tiered dues structure created two classes of members, in violation of the Articles of Incorporation. He indicated that the Articles would have to be amended to create two classes of members before there could be a distinction between dues for improved and unimproved lots.

SVCA filed a motion seeking clarification regarding whether the court's ruling included a determination that the two-tiered dues structure also violated the Covenants. By supplemental order on summary judgment the court ruled that the Covenants do not require that dues be assessed equally against all lot owners and do not prohibit SVCA members from adopting a multi-tiered dues structure provided that it is equitable. Yurica's motion for reconsideration was denied and the court ultimately issued a declaratory judgment concluding in relevant parts:

> It is the judgment of this Court that this Covenant [Covenant 16] does not require that dues and/or assessments levied against members be equal in amount but rather, requires that dues and/or assessments be "equitable." The word "equitable" as used in this Covenant, means "fair." As such, the Covenants do not prohibit SVCA's members from adopting a multi-tiered dues structure provided that it is equitable.
>
> . . . .
>
> It is the judgment of this Court that these provisions of the Articles of Incorporation [Article III(2), Article V] require that dues and/or assessments be levied against members in equal

amounts. The two-tiered dues structure adopted by the members of SVCA on June 11, 1994, creates two classes of members in violation of these provisions of the Articles of Incorporation. In order for a multi-tiered dues structure to be valid, the Articles of Incorporation must be amended to create more than one class of members for the purposes of dues and/or assessments.[2]

Following entry of the declaratory judgment, SVCA reverted to a uniform dues structure and made the appropriate refunds to owners of improved lots. At a special meeting held June 3, 1995, the members voted down proposed amendments to the Articles that would have created multiple classes of members for dues purposes, and voted down a renewal proposal for a multi-tiered dues structure.

SVCA deferred to the vote of its members, and did not appeal the court's ruling on the issue relating to the Articles of Incorporation. However, an owner of unimproved lots, Gilbert A. Jones, petitioned for, and was granted, intervenor status on this issue.

The posture of this case, therefore, is that the appeal of the trial court's ruling on the Covenants is being pursued by intervenor Yurica, and the cross-appeal of the trial court's ruling on the Articles is being pursued by intervenor Jones. SVCA itself seems content with the status quo, that is, a single-tiered dues structure.

I

▇ An appeal is moot when it presents "purely academic issues and where it is not possible for the court to provide effective relief."[3] This appeal is not moot because our decision affects important rights of all SVCA members which are currently in dispute. The trial court's declaratory rul-

---

[2]The declaratory judgment also included a ruling on an issue not challenged on appeal.

[3]*Citizens v. Klickitat County*, 122 Wn.2d 619, 631, 860 P.2d 390, 866 P.2d 1256 (1993).

ing on the governing documents continues to have an effect on association business and on members' potential assessment obligations. A decision resolving the questions raised on appeal will grant effective relief by providing clarity and finality to the interpretation of those documents.

 Ordinary rules of appellate procedure apply to an appeal from a declaratory judgment.[4] In reviewing a trial court's decision, the appellate court is to confine itself "to the issues the parties have raised and which the trial court considered."[5] We therefore confine our review to the limited conclusions reached by the trial court in the declaratory judgment. Many of Yurica's arguments regarding the two-tiered assessment structure as originally implemented by the Board were not considered by the trial court, and thus will not be reviewed by this court.[6] Moreover, the two-tiered assessment structure was later nullified by the Board pursuant to the direction of the trial court, and the members affirmed said nullification on June 3, 1995, by refusing to

---

[4]*Simpson Tacoma Kraft Co. v. Department of Ecology*, 119 Wn.2d 640, 646, 835 P.2d 1030 (1992).

[5]*Babcock v. State*, 116 Wn.2d 596, 606, 809 P.2d 143 (1991) (citing RAP 12.1(a) and *State v. Hubbard*, 103 Wn.2d 570, 573-74, 693 P.2d 718 (1985)); *see also Tacoma Grocery Co. v. Barlow*, 12 Wash. 21, 22, 40 P. 380 (1895) ("The general rule of appellate courts is that they will review only questions which the trial court has passed upon.").

[6]Issues that we decline to address include whether a two-tiered dues structure as originally implemented is inequitable, prejudicial, improperly redistributes ownership of the common areas and improperly permits the majority of lot owners to impose greater affirmative burdens on the minority. We also decline to address any issue related to the intended use of the funds that would be generated under a two-tiered dues structure. In this regard, Yurica argues that the use of dues to "subsidize" social programs violates SVCA's governing documents and the rule that assessments authorized by covenants which are appurtenant to ownership of real property must touch and concern the land. Moreover, these issues all appear to be heavily based on factual contentions, and would not lend themselves to resolution by summary judgment. *See Simpson*, 119 Wn.2d at 646 ("A summary judgment motion can be granted only when no genuine issue as to any material fact exists, and the moving party is entitled to judgment as a matter of law.").

A motion to strike portions of Yurica's brief was filed by SCVA. Because we limit our review to the issues decided by the trial court, we need not consider either the challenged documents or arguments, and therefore decline to address the motion.

pass proposals to amend the Articles of Incorporation and reinstate a two-tiered assessment structure.[7]

Therefore, in deference to SVCA, and recognizing the limited issues properly before the court, we narrow our review to consideration of whether or not, as written, the governing documents of SVCA accommodate the concept of a multi-tiered dues structure, without attempting to anticipate specific implementation variables.

## II

 Interpretation of the language in a restrictive covenant is a question of law that the appellate court reviews de novo.[8] The primary objective "is to determine the intent of the parties to the agreement, and, in determining intent, clear and unambiguous language will be given its manifest meaning."[9] The clear intent of a restrictive covenant "is determined by the purposes sought to be accomplished by the covenant", and while courts should not give a covenant a broader than intended application, "it is well settled that a covenant should not be read in such a way that defeats the plain and obvious meaning of the restriction."[10] Restrictive covenants are not to be extended by implication to include matters not clearly expressed in the agreement.[11]

Restrictive Covenant 16 declares that the SVCA:

shall have the power to charge and assess its members on an equitable basis for the operation and maintenance of said facil-

---

[7]The failure of the proposal to reinstate a two-tiered assessment structure on June 3, 1995, constitutes the most recent vote of the SVCA membership on this topic, and effectively nullifies the affirmative vote in June 1994. The current status is that assessments are uniformly set at $340 per lot, as they have been since 1982.

[8]*Riss v. Angel*, 80 Wn. App. 553, 556, 912 P.2d 1028, *review granted*, 129 Wn.2d 1019 (1996) (citing *Parry v. Hewitt*, 68 Wn. App. 664, 668, 847 P.2d 483 (1992)).

[9]*Burton v. Douglas County*, 65 Wn.2d 619, 621-22, 399 P.2d 68 (1965).

[10]*Lakes at Mercer Island Homeowners Ass'n v. Witrak*, 61 Wn. App. 177, 180, 810 P.2d 27, *review denied*, 117 Wn.2d 1013 (1991).

[11]*Burton*, 65 Wn.2d at 624.

ities provided by the Declarant and to charge and assess its members on an equitable basis for such additional recreational or other facilities as shall be duly authorized by its membership for the mutual benefit of all its members . . . . Minimum monthly dues and/or assessments for each member shall be Nine Dollars ($9.00) and said dues and/or assessments shall commence September 1, 1970, or later at the discretion of the Declarant.

██ ██ The discretion vested in SVCA in assessing its members is limited only by the requirement that such assessments be on an equitable basis.[12] Such broadly stated limitations on governmental authority are not uncommon in foundational documents, as can be seen from constitutional language such as "due process," "equal protection," and "unreasonable searches and seizures." "Equitable" means "characterized by equity: fair to all concerned."[13] SCVA's authority to assess its members within this limitation is also inherently circumscribed by the rule that assessments authorized by covenants which are appurtenant to ownership of real property must "touch and concern" the land, and be used exclusively for purposes stated in the governing documents which meet that criteria.[14]

There is nothing in this governing scheme which necessarily leads one to conclude that the original intent of the covenant language was to impose a rigid formula of, for example, equal assessments for all lots. Equality is not the sole, or even a necessary, cornerstone of equity under all circumstances.

We reject Yurica's argument that the reference in the Covenants to minimum monthly dues of $9 per lot (as an

---

[12]Members of an association may "attack assessments deemed to be unreasonable and the result of an abuse of discretion, but the plan of operation does not fail in its entirety merely because such discretion has been vested in the commission." *Rodruck v. Sand Point Maintenance Comm'n*, 48 Wn.2d 565, 577, 295 P.2d 714 (1956). As a check and balance, SVCA By-Laws require that annual dues and assessments be approved by a 60 percent majority vote of the membership. By-Laws, art. III, § 19(a).

[13]WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 769 (1969).

[14]*See* SVCA By-Laws, art. III, § 19(a); *Rodruck*, 48 Wn.2d at 576-78.

initial policy before SVCA or its predecessor were incorporated) somehow establishes a rigid definition of equity which requires equal assessments for all lots in perpetuity.[15] We also reject Yurica's argument that covenants which are appurtenant to real property must, by definition, impose equal burdens (i.e., assessments) on all lots. That would be an unjustified extension of the "touch and concern" rule.

The founders of Sudden Valley intentionally vested SVCA with discretion to annually establish assessments on an equitable basis, depending upon circumstances then prevailing. Such a declaration is clear and unambiguous, and will be given its manifest meaning.

We affirm the trial court's conclusion regarding the Covenants, and hold that the Covenants, as written, may accommodate a multi-tiered assessment system, if equitable.

### III

We next consider the cross-appeal challenging the trial court's ruling that the Articles of Incorporation, as written, cannot accommodate a multi-tiered assessment system, regardless of how equitable it may be.

 ██ Article III(2) provides in part:

The purposes for which this corporation is organized are as follows:

. . .

(2) To establish and collect assessments against each

---

[15]Yurica suggests that SVCA should be estopped from arguing that the Covenants permit a two-tiered structure because of inconsistent positions it took in two previous cases. *See Lake Arrowhead Community Club, Inc. v. Looney*, 112 Wn.2d 288, 770 P.2d 1046, 7 A.L.R.5TH 1034 (1989) and *Sudden Valley Community Ass'n v. Palzer*, No. 20724-5-I (Wash. Ct. App. Nov. 13, 1989). Because the issues in those cases were different, and because Yurica fails to allege the elements of estoppel, including her reasonable reliance on an inconsistent statement, this argument is without merit. *See Robinson v. Seattle*, 119 Wn.2d 34, 82, 830 P.2d 318 (listing the elements of equitable estoppel, and noting that the doctrine is not favored, and that the party asserting estoppel must prove each of its elements by clear, cogent and convincing evidence).

member of the corporation to provide for maintenance and operation of all the common areas and facilities transferred to it within the Sudden Valley Development for the mutual benefit of all its members. Minimum monthly dues of Nine Dollars ($9.00) shall be assessed and collected against each lot and condominium to provide the funds required to maintain and control all roads, parks, reserve areas, community beach areas and recreational areas, and to provide for architectural and building controls within the limitations of the Restrictive Covenants of the plats of the Sudden Valley Development, and to provide and pay all taxes and assessments, if and when levied by the State or any municipal corporation on said community facilities, and to provide and pay for a security guard and patrol at all times on said property.

The language of this Article, although written over two years after the Covenants were written, appears to parallel Covenant 16, quoted above, with the exception that it omits the limitation that assessments must be on an "equitable basis." As with our analysis of Covenant 16, we detect nothing in the plain language of Article III(2) which mandates a rigid equal assessment formula for all lots in perpetuity. Moreover, to read this language inconsistently with the language in Covenant 16, when the same appear to have been intended to mirror one another, would be violative of the principle that such documents are to be considered correlated documents.[16]

■■■ Article V, however, adds a new element to the consideration, and one which has no parallel in the Covenants. It provides, in part:

The corporation shall have one class of members, which shall be all lot owners and condominium owners within the Sudden Valley Development. The owner of each lot or condominium shall have one membership for each lot or condominium owned and be entitled to one vote for each lot or condominium owned.

---

[16]See Rodruck, 48 Wn.2d at 577 ("The articles of incorporation, bylaws, and deeds are correlated documents."); see also Shafer v. Board of Trustees of Sandy Hook Yacht Club Estates, Inc., 76 Wn. App. 267, 276, 883 P.2d 1387 (1994), review denied, 127 Wn.2d 1003 (1995).

Under the By-Laws, a member is defined as: "any person(s), corporation, partnership, trust or any other legal entity who owns all or a part of an interest in one or more lots in Sudden Valley to which membership is appurtenant."[17] Membership consists of, and is limited to, "the owners of lots in Sudden Valley who shall have one membership for each lot."[18] A member is entitled to one vote for each lot which he/she owns.[19]

The Nonprofit Corporation Act under which the SVCA was formed defines a member as "an individual or entity having membership rights in a corporation in accordance with the provisions of its articles or incorporation or bylaws."[20] Under the Act, a corporation may have one or more classes of members, or have no members.[21] If the corporation, however, has one or more classes of members "the designation of such class or classes, the manner of election or appointment and the qualifications and rights of the members of each class shall be set forth in the articles of incorporation or the bylaws."[22]

Yurica argues that a dues structure that differentially assesses members based upon whether their lots are improved or unimproved creates two classes of members, and cannot be accommodated without an amendment to the Articles which officially designates such classes.

We conclude that the concept of classes of members in a nonprofit corporation does not support Yurica's analysis. Class distinctions in such corporations are founded on a member's qualifications (for example, active members, inactive members, honorable members, lifetime members, et cetera), or the rights, privileges and benefits accorded a member (for example, voting rights, the right to be an officer, access rights to club facilities, et cetera).

[17]By-Laws, art. I, § 2(a).

[18]By-Laws, art. I, § 2(b).

[19]By-Laws, art. II, § 7(a).

[20]RCW 24.03.005(6).

[21]RCW 24.03.065.

[22]RCW 24.03.065.

Ownership of an improved or an unimproved lot, as in the instant case, however, is not the type of distinguishing feature that would set different classes of members apart. One is not "elected" or "appointed" to owning an improved lot as compared to an unimproved lot. Moreover, the amount of assessment paid by one member as compared to the amount paid by another does not inhere in lot ownership or club membership, and is not a distinguishing class feature. Similarly, one is not a different class of citizen in this country merely because one pays more or less in taxes to the government than another citizen may.

We hold that the Articles of Incorporation of SVCA, as written with a single class of members, do not prohibit implementation of a multi-tiered dues structure. We caution, however, that if a multi-tiered dues structure also were to place limits on a member's access to the common areas or other benefits or privileges inherent in lot ownership, based upon whether the member's lot was improved or unimproved, and whether the member paid lesser or greater dues, then differential classes of members would be created in violation of the Articles, as presently written. This is because under such a system, actual rights and privileges appurtenant to lot ownership and corporate membership would be affected.

To summarize, we affirm the portion of the declaratory judgment regarding the Covenants, and reverse the portion regarding the Articles, and hold that the governing documents of SVCA, the Covenants and Articles of Incorporation, as written, permit the implementation of a multi-tiered dues system, if equitable.

Reversed in part; affirmed in part.

KENNEDY, A.C.J., and COX, J., concur.

After modification, further reconsideration denied September 12, 1997.

Review denied at 134 Wn.2d 1014 (1998).