**PUBLIC UTILITY DISTRICT NO. 1 OF FERRY COUNTY, WASHINGTON, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 363–88C.

United States Claims Court.

June 26, 1990.

Charles Matthew Andersen, Spokane, Wash., for plaintiff.

Agnes M. Brown, with whom was Asst. Atty. Gen. Stuart E. Schiffer and David M. Cohen, Washington, D.C., for defendant.

## OPINION

ROBINSON, Judge.

This case is before the court on cross motions for summary judgment. Defendant moved to dismiss, or in the alternative, for summary judgment, alleging that this court lacks jurisdiction to entertain plaintiff's complaint because it is not founded upon an express or implied contract with the United States. Plaintiff cross moved for summary judgment on the grounds that its client had an express contract with the United States (through the Farmer's Home Administration) for the provision of electrical services on the Government's property or, in the alternative, an implied-in-fact contract with the United States for the provision of such services. For the following reasons, the court will grant defendant's motion for summary judgment and deny plaintiff's motion for summary judgment.

### Factual Background

This case involves a parcel of realty located in Ferry County, Washington which the Government acquired on June 26, 1985 by exercising redemption rights in connection with Mutual of New York's first mortgage foreclosure. The parcel was previously owned by the Swawilla Land & Livestock, Inc., and James Madden (owners), and was used for farming and pasture land. In June of 1978, the Farmer's Home Administration (FmHA) advanced funds to the owners and took a mortgage in the irrigation equipment which plaintiff placed on the property.[1] In May and June of 1979, the owners entered into two contracts with plaintiff for the provision of power for irrigation of the parcel of realty, which required that the owners pay for power regardless of whether they actually used any electrical power. Plaintiff recorded both contracts properly on August 22, 1979.

Mutual Life Insurance Company of New York, the primary lender, instituted foreclosure proceedings against the owners, and obtained a judgment against the owners on January 6, 1984. Swawilla Land & Livestock, Inc., the Maddens, and the FmHA were joined as parties. In June of 1985, the United States, as a redemptor, acquired the parcel of realty at issue. Since June of 1985, the property has been vacant, no irrigated farming has occurred and irrigation equipment has not been used. Thus, since that date no electrical power has been used for farm operations.

---

1. Plaintiff notes that it is very expensive to place irrigation equipment on the realty at issue. Plaintiff required a ten year contract for the provision of electrical power to the parcel in order to recoup its cost of placing the equipment on the property.

Broker Auction held an auction on the property at issue on October 10, 1985, and sold the machinery and equipment of the owners. Just before the auction was to commence, a lineman for plaintiff started to disconnect the power for the farmstead property. The farmstead property is served by power which is separate from the power which serves the irrigation equipment. Mr. LeRoy Fletcher, FmHA's county supervisor, asked the lineman to keep the power on to the farmstead until the end of the day when the auction would be over. Plaintiff's lineman complied with this quite reasonable request[2] with respect to the farmstead power, but he did disconnect the power to the irrigation equipment. He later returned and disconnected the farmstead power. Since then, the only contact between plaintiff and the Government (as redemptive purchaser of this parcel) that occurred within the next year was in June of 1986 when Kenneth Cole, Manager of PUD, contacted the FmHA County Supervisor to ask whether FmHA would be paying the outstanding power charges.

After it became apparent that the FmHA would not agree to pay the outstanding power charges, plaintiff, on June 21, 1988, filed suit in this court under 28 U.S.C. § 1491 (Tucker Act). Plaintiff alleged that the United States stepped into the shoes of its predecessor (owners) and therefore is bound by the express contract entered into between the prior owners and plaintiff for the provision of electrical services. In the alternative, plaintiff claims the existence of an implied-in-fact contract with the Government binding the Government to pay its charges for the balance of the ten year period, and that the Government is estopped from denying its knowledge of the existence of the contract. Defendant denies that there is an express or implied-in-fact contract under these facts.

## DISCUSSION

Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. RUSCC 56(c). A fact is material only if it could affect the outcome of the suit, and its materiality is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court agrees with the parties that there are no *material* facts in dispute. Further, the court finds that, even when viewing the facts in a light most favorable to plaintiff, defendant is entitled to judgment as a matter of law.

█ The first issue is whether there is an express contract between the United States and plaintiff, obligating the Government as the new owner of the property to pay plaintiff's remaining service charges. The undisputed facts show that no representative of the FmHA nor any other Government agency executed a written contract with plaintiff specifically agreeing to pay plaintiff's charges. Therefore, plaintiff principally relies upon the allegation that the Government, as the successor in interest of the prior owners, is bound by the two written service contracts between plaintiff and the prior owners because plaintiff's interest in the subject realty was never extinguished in the foreclosure action. Therefore, plaintiff argues its interest, a contract right to be paid for the continued availability of electrical service, constitutes a covenant running with the land under State of Washington law, which is binding upon the Government as the new owner of the realty.

In order for these two recorded power supply contracts to constitute a covenant running with the land under State of Washington law, five elements must be met:[3]

---

**2.** Certainly there was no request that the power for irrigation equipment be continued. Essentially, Mr. Fletcher requested that the farmstead power be left on so that the auction could be completed.

**3.** Defendant argues secondarily that to hold that the two contracts gave rise to a covenant run-

ning with the land and that therefore the government is bound by the Madden–PUD contract, would be to imply a contract in law and therefore outside of the jurisdiction of this court. The court does not need to reach this issue since we hold that plaintiff has failed to prove as a matter of law that a covenant run-

(1) [T]he covenant must have been enforceable between the original parties, such enforceability being a question of contract law ...; (2) the covenant much "touch and concern" both the land to be benefitted and the land to be burdened; (3) the covenanting parties must have intended to bind their successors in interest; (4) there must be vertical privity of estate ...; *and* (5) there must be horizontal privity of estate, or privity between the original parties.

*Bremmeyer Excavating, Inc. v. McKenna,* 44 Wash.App. 267, 721 P.2d 567, 568 (1988) (emphasis added); *see also Lake Arrowhead Community Club, Inc. v. Looney,* 112 Wash.2d 288, 770 P.2d 1046, 1050 (1989).

The five elements are phrased in the conjunctive. Clearly, plaintiff must show that all of these five elements are satisfied before a covenant running with the land can exist. Therefore, the court will focus on the two elements of proof which plaintiff has most clearly failed to meet—a mutual intent to bind successors in interest and horizontal privity.[4] First, neither the language of the two contracts nor the "four corners" of these instruments evinces any intent that they are intended to bind successors in interest. The contracts do not state that they shall be binding upon the parties' successors, heirs, or assigns of the property. Normally, a standard clause to this effect is inserted in contracts when the parties intend to establish a covenant to run with the land, and the intent to do so is usually stated with particularity. *See CBN Corporation v. United States,* 364 F.2d 393, 399, 176 Ct.Cl. 861, 871 (1966). The absence of such a clause in these power service contracts is persuasive that the parties intended no such result. Nor has plaintiff introduced any other credible evidence to show that there was mutual intent

for this covenant to be binding upon the successors in interest to this property.

■ Plaintiff argues that the court should infer this mutual intent from the four corners of the instrument. Plaintiff first cites paragraph 2A of the contract which states that the contract for electrical power shall run for ten years. Specifically, paragraph 2A states that "... irrespective of the Consumer's requirements, the Consumer shall pay to the sellers not less than $3,000.00 minimum per year for service or for having service available hereunder for a period of ten years." However, the mere fact that these contracts had ten year terms is insufficient evidence to prove by a preponderance of the evidence that the owners and plaintiff intended to bind successive owners of the property. Indeed, there is a total absence of any evidence that these two contracts were intended to bind successors in interest to the property whether they acquired title through purchase, inheritance or otherwise.

■ Plaintiff next argues that paragraph 3.B. of the contracts also supports its interpretation that there was a mutual intent to create a covenant running with the land. Paragraph 3.B. states:

In the event the Consumer is leasing said premises, and not the owner thereof, the Consumer shall be required to furnish a deposit to cover such service in such sum as shall be approved, or the lease holder will sign the Contract for Purchase of Power with the Consumer.

This paragraph is patently ambiguous. The term "Consumer" is defined in the contracts' first paragraph as the owners, James P. Madden and Swawilla Land and Livestock, Inc. However, paragraph 3.B. refers to a "Consumer" that is "not the owner," but a lessee who is to either make a service deposit or is to execute the contract with the *consumer.* This latter refer-

---

ning with the land exists under State of Washington law.

**4.** Plaintiff and Defendant disagree as to whether the covenant touches and concerns the land because they disagree as to whether the leaving of the irrigation equipment on the property constituted a benefit to the value of the property.

However, this dispute is not material since it will not make a difference in the resolution of this case. Since the court finds that plaintiff has *clearly* failed to meet two of the required five elements of a covenant running with the land, it is irrelevant whether this covenant touches and concerns the land.

ence is in error and clearly should have referred to the owner. But, what 3.B. does not say is more important. It makes no reference to a successor in interest to the realty. Thus, there are no requirements imposed upon a subsequent owner to make a deposit or execute the contract along with the former owner. Under the doctrine of *expressio unius est exclusio alterius,* the expression of one thing is the exclusion of another, the omission of any such requirement respecting a subsequent owner is persuasive evidence that there was no mutual intent to bind subsequent owners to these same covenants. *See National Maritime Union of America, AFL–CIO v. United States,* 682 F.2d 944, 953, 231 Ct.Cl. 59, 72 (1982). Had that intent existed, the parties could have easily inserted such a requirement in paragraph 3.B. Therefore, the court finds that contrary to plaintiff's contention, paragraph 3.B. evinces no mutual intent to bind successors in interest and therefore does not establish a binding covenant running with the land requiring subsequent owners to pay for electrical power. In fact, a more reasonable conclusion is that paragraph 3.B. supports defendant's argument that the contract reflects no mutual intent to establish a covenant running with the land.

Furthermore, plaintiff has failed to show that horizontal privity of estate exists. Plaintiff must show that the covenant is included in the conveyance of an interest in land or that plaintiff was involved in the conveyance of an interest in land. *See People for Preservation & Dev. of Five Mile Prairie v. Spokane,* 51 Wash.App. 816, 755 P.2d 836 (1988); *see also Lake Arrowhead Community Club, Inc. v. Looney,* 112 Wash.2d 288, 770 P.2d 1046, 1050 (1989). However, the undisputed evidence shows that plaintiff was never involved in a conveyance of land or an interest in land to the owners, nor was an estate in land ever expressly conveyed between plaintiff and owners when the two contracts were executed.

The court, therefore, finds that plaintiff has failed to establish the existence of an express contract between plaintiff and defendant based upon its contention that a covenant for payment for electrical power charges was established which ran with the land and became binding upon defendant when it acquired title to the property.

■ Plaintiff's alternative argument is that there is an implied-in-fact contract between itself and the Government. Plaintiff contends that mutual intent to contract may be inferred since the Government was aware of the existence of the Madden–PUD contracts, it was aware of the existence of the power and electrical equipment, and it took no action to inform plaintiff that it would not be using any of plaintiff's services. Further, plaintiff contends that this intent was manifested by the FmHA County Supervisor, Mr. Fletcher, when he asked the PUD lineman to keep the power on until the auction was over. Plaintiff contends that this was a contractual offer. In addition, plaintiff avers that a benefit of over $33,000 flowed to the Government, constituting sufficient consideration. Lastly, plaintiff argues that Mr. Fletcher had actual authority to bind the Government in contract.

■ It is well settled that to have an implied-in-fact contract, plaintiff must allege and prove mutuality of intent, an unambiguous offer and acceptance to contract, consideration, and that the Government official involved had actual authority to bind the Government in contract. *Pacific Gas & Electric Co. v. United States,* 3 Cl.Ct. 329, 339, *aff'd,* 738 F.2d 452 (Fed.Cir. 1984). Under these facts, it is impossible to infer that there was an offer, acceptance, mutuality of intent, or actual authority to contract. First, and most importantly, there is no evidence that the United States intended to enter into a contractual relationship with plaintiff for the provision of electrical services to the subject property. In fact, the complete absence of any such evidence coupled with the nonuse of any of the equipment plaintiff left on the property indicates a clear intent not to be bound to any such contractual obligation.

Moreover, the court can find no evidence of an offer or acceptance to contract. When Mr. Fletcher asked the PUD lineman

to leave the power on to the farmstead, he did so only for the purpose of completing the ongoing auction. Even if Mr. Fletcher had a different purpose in requesting that the power be left on, it would still not be a sufficient manifestation of intent to make a legally binding offer to enter into a contract for the provision of electrical power for the entire parcel of property.

Furthermore, it has not been proven that Mr. Fletcher, as the County Supervisor for the FmHA, had actual authority to bind the Government. Plaintiff has simply made the naked assertion that Mr. Fletcher had such authority, but plaintiff has not introduced any persuasive evidence to that effect, nor can his authority to bind the Government be inferred from his actions on the record presented. *See Jascourt v. United States*, 521 F.2d 1406, 207 Ct.Cl. 955 (1975) (burden is on plaintiff to allege and prove actual authority).

## CONCLUSION

The court finds that plaintiff has failed to show that either an express or an implied-in-fact contract exists under these facts.[5] Therefore, the court grants defendant's motion for summary judgment and denies plaintiff's cross-motion for summary judgment.

The Clerk is directed to dismiss plaintiff's complaint. No costs.

IT IS SO ORDERED.

5. Plaintiff had alleged the existence of a lien on the subject property, but withdrew that argument at oral argument on December 20, 1989. Furthermore, plaintiff's argument of equitable estoppel, which it did not pursue at oral argument, lacks merit. As previously discussed, there is no contract of any kind between plaintiff and the government, and for that reason, this court lacks jurisdiction over this case, and thus there is no grounds for an equitable estoppel argument. *See Pacific Gas & Electric Co. v. United States*, 3 Cl.Ct. 329, 340–341, *aff'd*, 738 F.2d 452 (Fed.Cir.1984). This court has addressed the essential claims plaintiff has raised and finds that they are all without merit. All other extraneous claims which plaintiff has raised are also denied as being without merit.