[No. 45241-0-I. Division One. September 18, 2000.]

1515-1519 LAKEVIEW BOULEVARD CONDOMINIUM ASSOCIATION, ET AL., *Appellants*, v. APARTMENT SALES CORPORATION, ET AL., *Respondents*.

600

*Rand L. Koler* and *Kevin T. Ireland,* for appellants.

*Stephen H. Goodman* (of *Graham & Dunn*); *Mark F. O'Donnell* and *Charles A. Willmes* (of *Preg O'Donnell Sargeant & Gillett, P.L.L.C.*); *Scott D. Fletcher* and *Douglas J. Green* (of *Hight Green & Yalowitz*); and *Mark H. Sidran, City Attorney for the City of Seattle,* and *Marcia M. Nelson, Assistant,* for respondents.

WEBSTER, J. — The appellants (Homeowners) own real property severely damaged by a landslide that occurred in early 1997. Homeowners brought suit against the City of Seattle and others. In its motion for summary judgment, the City argued that a recorded covenant waived all their negligence claims. The City also argued that the public duty doctrine and the assumption of the risk doctrine bar the Homeowners' negligent permitting claims. The trial court granted summary judgment in favor of the City. Homeowners appeal arguing: (1) the Covenant does not waive all their negligence claims; (2) the public duty doctrine does not bar their negligent permitting claims; and (3) they did not assume the risk of a landslide. We reverse because the Covenant does not run against Homeowners. Although the public duty doctrine bars their claim against the City for negligent permitting, only partial summary judgment is appropriate because the claim that the City negligently maintained the public storm drain remains an issue.

## FACTS

The City of Seattle issued a permit to Apartment Sales Corporation (the developer) to construct three condominium units, but only after the developer recorded a covenant promising to warn future purchasers that the site was a potential landslide area. In addition, the Covenant waived any claims by the owners of the property against the City arising from soil movement and issuance of the permit, except for losses directly caused by the sole negligence of the City:

Owner(s) on his/her own behalf and on behalf of his/her heirs, successors and assigns hereby waives any right to assert any claim against the City for any loss, or damage to people or

property either on or off the site resulting from soil movement by reason of or arising out of issuance of the permit(s) by the City for development on the property except only for such losses that may directly result from the sole negligence of the City.

Clerk's Papers (CP) at 284. Title insurance reports issued to the Homeowners show that the developers recorded the Covenant. All the reports clearly state in their summaries that the property is a potential slide area.

Soon after purchasing one of the condominium units, Frank and Penny Fukui experienced numerous flooding incidents caused by surface water entering their unit from the street. On at least one occasion, the City settled a claim for damages brought by the Fukuis. The City also attempted to remedy the problem by installing new curb drains in front of the unit. These improvements, however, did not stop pooling of surface water in front of the condominiums or overflow of the public storm drain system.

After severe storms produced record setting precipitation in Seattle in late 1996, the land beneath the condominium units began to slide. Within a period of 24 hours, the property sunk four to six feet and moved westward about two feet. Homeowners sued the City as well as the developer, the geotechnical engineer, the architect, the contractor, and the structural engineers. The trial court granted summary judgment in favor of the City. Around the same time, Homeowners settled their case against the developer. Homeowners timely appeal the grant of summary judgment.

## DISCUSSION

### I

#### Covenant

■ Homeowners argue that the Covenant does not run with the land and therefore does not prevent them from bringing this negligence action against the City. For a covenant to run with the land, it often depends on what type of covenant it is. There are two types of restrictive or running covenants: Real covenants and equitable restric-

tions. *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 691, 974 P.2d 836 (1999); 17 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 3.1 (1995). Traditionally, real covenants run at common law while equitable restrictions run in equity. 1 WASHINGTON STATE BAR ASS'N, REAL PROPERTY DESKBOOK § 14.2 (3d ed.1997) (citing *Spencer's Case*, 5 Co. 16a, 77 Eng. Rep. 72 (Q.B. 1583); *Tulk v. Moxhay*, 2 Phil. 774, 41 Eng. Rep. 1143 (Ch. 1848)). Homeowners argue that the Covenant is not enforceable because it does not meet all the elements required for a real covenant to run at common law. In contrast, the City contends that the Covenant meets the less stringent requirements for an equitable restriction to run in equity as set out in *Hollis*, 137 Wn.2d at 691.

To run at common law, a real covenant must meet five elements: (1) the covenant must be enforceable as a contract between the original parties; (2) the covenant must touch and concern estates in land with which the burdens and benefits run; (3) the covenanting parties must have intended to bind their successors in interest; (4) there must be vertical privity of estate; and (5) there must be horizontal privity of estate. *Lake Arrowhead Community Club, Inc. v. Looney*, 112 Wn.2d 288, 295, 770 P.2d 1046, 7 A.L.R. 5th 1034 (1989); *Mountain Park Homeowners Ass'n. v. Tydings*, 72 Wn. App. 139, 145, 864 P.2d 392 (1993), *aff'd*, 125 Wn.2d 337, 883 P.2d 1383 (1994); STOEBUCK, WASHINGTON PRACTICE §§ 3.2-3.6; DESKBOOK, § 14.2(2)(a).

To run in equity, an equitable restriction requires all of the above elements except horizontal privity of estate. DESKBOOK, § 14.2(2)(a); STOEBUCK, WASHINGTON PRACTICE §§ 3.10-3.15. Instead, the successor of the covenantor must have actual or constructive notice of the equitable restriction. DESKBOOK, § 14.2(2)(a); STOEBUCK, WASHINGTON PRACTICE § 3.16. As Homeowners correctly assert, the *Hollis* court slightly misstated the elements for an equitable restriction.[1]*Hollis*, 137 Wn.2d at 691-92; *Cf. Lake Arrowhead*, 112 Wn.2d at 295 (elements for real covenants). In

---

[1] The language in *Hollis* that is in dispute was not central to the decision or even an issue in that case. In the end, the Court correctly applied the touch and concern requirement. Therefore, the language in question constitutes dicta.

*Hollis*, the Washington Supreme Court combined the second and third elements into one element and said that an equitable restriction met the combined element either if it touches and concerns the land *or* if the parties intended to bind successors. *Hollis*, 137 Wn.2d at 691-92 (citing William B. Stoebuck, *Running Covenants: An Analytical Primer*, 52 WASH. L. REV. 861, 909-10 (1977)). Yet, Professor Stoebuck makes clear that a mere intent to bind successors cannot replace the essential touch and concern requirement. STOEBUCK, WASHINGTON PRACTICE, § 3.13, at 148 (citing *Mullendore Theatres, Inc. v. Growth Realty Investors Co.*, 39 Wn. App. 64, 691 P.2d 970 (1984)). Rather, it is the parties' intent that may be inferred if the equitable restriction touches and concerns the land, not the other way around. STOEBUCK, WASHINGTON PRACTICE, § 3.13, at 147. In the end, the *Hollis* court correctly applied the touch and concern element to the equitable restriction. *Hollis*, 137 Wn.2d at 692. Contrary to the City's position, the touch and concern requirement is not optional.[2]

■ In any case, *Hollis* is distinguishable because it involved an equitable restriction. *Hollis*, 137 Wn.2d at 691. Because the original parties in *Hollis* did not incorporate the covenant in deed, it could not be a real covenant. *Hollis*, 137 Wn.2d at 691. Here, the parties incorporated the Covenant in deed. Furthermore, the Covenant restricts damages at law, i.e., negligence actions, and does not involve a restriction remedied in equity by an injunction such as in *Hollis*, 137 Wn.2d at 699-700. We conclude that the Covenant must run at common law to bar money damages and therefore must meet all five elements for real covenants. This approach is consistent with prior cases that the *Hollis* Court did not address. *See, e.g., Lake Arrowhead*, 112 Wn.2d at 295 (covenant to pay assessments) *cited in Public Util. Dist. No.1 v. United States*, 20 Cl. Ct. 696, 699 (1990) (all five elements required).

■ Homeowners dispute only two elements: (1) Touch and concern; and (2) horizontal privity. First, they argue that the Covenant does not touch and concern the land. For

---

[2] In a motion for reconsideration to this Court after our decision, the City argues that public policy supports enforcement of the Covenant despite the traditional touch and concern requirement (citing *Howe v. Douglas County*, 102 Wn. App. 559, 7 P.3d 883 (2000)); RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 3.2 (2000). Because the parties did not argue public policy in their briefs, we do not reach this issue. RAP 12.1(a).

the Homeowners' side of the Covenant to run, the burden must touch and concern estates in land they own. STOEBUCK, WASHINGTON PRACTICE § 3.3, at 128. To touch and concern, Washington courts have required a semiphysical connection between the covenant and the land. STOEBUCK, WASHINGTON PRACTICE § 3.3, at 133 (citing *Rodruck v. Sand Point Maintenance Comm'n*, 48 Wn.2d 565, 574, 295 P.2d 714 (1956)). In *Rodruck*, for example, the Washington Supreme Court defined touch and concern as involving the occupation or enjoyment of the land. *Rodruck*, 48 Wn.2d at 574 (covenant to pay street maintenance costs). Obviously, a covenant touches and concerns the land when it restricts the use of the land. *Hollis*, 137 Wn.2d at 692 (restriction to residential use); *Tydings*, 72 Wn. App. at 145-46 (restriction against antennas).

In contrast, if a covenant does not touch or concern the occupation or enjoyment of land, it is a collateral and personal obligation that does not run with the land. *City of Seattle v. Fender*, 42 Wn.2d 213, 218, 254 P.2d 470 (1953). A covenant to use a particular contractor does not touch and concern the property but is merely personal. *Bremmeyer Excavating, Inc. v. McKenna*, 44 Wn. App. 267, 269, 721 P.2d 567 (1986). Also, a landlord's covenant to refund a tenant's security deposit does not touch and concern the land when it does not require the landlord to spend the money for repairs or maintenance, or to transfer the money to his successors. *Mullendore*, 39 Wn. App. at 66. Moreover, a right of first refusal to purchase land is only a personal right when there is no evidence that it affected the value of the land. *Feider v. Feider*, 40 Wn. App. 589, 592, 699 P.2d 801 (1985).

Here, the Covenant does not touch and concern the land because there is no evidence that it increased or decreased the value of the land. Furthermore, it does not physically affect the land like most running covenants do. Rather, the covenant is merely a personal covenant made by the developer to obtain land use and construction permits. Because the Covenant does not touch and concern the

land, we conclude that it does not run against the Homeowners. We need not address horizontal privity.

## II

### Public Duty Doctrine

■ The City asserts that the public duty doctrine bars Homeowners' negligent permitting claims. In a negligence action, the threshold determination is whether the defendant owed a duty of care to the plaintiff. *Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988). According to the public duty doctrine, a governmental entity is not liable in negligence to an injured plaintiff unless the entity owes a duty to the plaintiff individually as opposed to the public generally. *Taylor*, 111 Wn.2d at 163. In general, land use and building regulations impose duties owed only to the public at large. *Taylor*, 111 Wn.2d at 164; *Phillips v. King County*, 87 Wn. App. 468, 481, 943 P.2d 306 (1997), *aff'd*, 136 Wn.2d 946, 968 P.2d 871 (1998) (county not liable for surface water runoff). Nonetheless, there are four exceptions to the public duty doctrine: (1) where the Legislature enacts legislation for the protection of persons in plaintiff's class; (2) where the government fails to enforce a specific statute; (3) where a special relationship exists between the plaintiff and the governmental entity; and (4) where the government has voluntarily engaged in rescue efforts. *Phillips*, 87 Wn. App. at 481. Homeowners contend that all four exceptions apply.

A. Legislative Intent Exception

■ ■ First, they argue that municipal legislation protects persons in their class. Liability upon a municipal code is possible if the code by its terms evidences a clear intent to identify and protect a particular class of persons. *Taylor*, 111 Wn.2d at 164. Contrary to Homeowners' position, Seattle Municipal Code (SMC) 22.808.130 does not create a duty upon the City to warn purchasers of potential landslide areas. The code merely provides that the Director of Construction and Land Use may require the owner to file a

covenant in which *the owner* agrees to inform future purchasers of the risks. SMC 22.808.130(C)(1)(c). Homeowners also cite Director's Rule 2-87, which simply provides procedures and guidelines for carrying out SMC 22.808.130. The Rule requires *the owner* to execute the covenant described above. As a result, the duty was on Apartment Sales—not on the City—to warn purchasers of the risks. In addition, Homeowners cite SMC 25.09.020(B)(1)(a) as protecting persons in their class. But, that code expressly states that its purpose is to promote the health, safety and welfare of the *general public*, and not to protect a particular person or class. SMC 25.09.020(A). Because Homeowners have failed to point out legislation that protects them as persons in a particular class, we find that this public duty exception does not apply.

B. Failure to Enforce Exception

■ ■ Next, Homeowners argue that the City did not enforce its own statutes and regulations. The failure to enforce exception to the public duty doctrine applies when (1) governmental agents are responsible for enforcing a statute, (2) they have actual knowledge of a statutory violation and fail to take corrective action despite a statutory duty to do so, and (3) the plaintiff is within the protected class of the statute. *Atherton Condominium Apartment-Owners Ass'n Bd. v. Blume Dev. Co.*, 115 Wn.2d 506, 531, 799 P.2d 250 (1990); *Pepper v. J.J. Welcome Constr. Co.*, 73 Wn. App. 523, 533, 871 P.2d 601 (1994) (despite awareness of *potential* water runoff and erosion problems, county protected by public duty doctrine). Knowledge of a statutory violation is not required; knowledge of facts constituting the violation is sufficient. *Pepper*, 73 Wn. App. at 533. In the construction and land use context, specifically, the failure to enforce exception applies when a public official (1) has actual knowledge of an inherently dangerous and hazardous condition, (2) has a duty to correct the problem, and (3) fails to meet this duty. *Atherton*, 115 Wn.2d at 531; *Pepper*, 73 Wn. App. at 533.

Here, the fact that the City required Apartment Sales to record the Covenant recognizing that the site was a poten-

tial slide area demonstrates that the City had actual knowledge of an inherently dangerous condition. According to Homeowners, the City had a duty to assure stabilization of the site under SMC 25.09.080(A). Under SMC 25.09-.080(A), however, it is unclear who has a duty to assure stabilization. It states only that complete stabilization "shall be required." SMC 25.09.080(A). In any case, SMC 25.09.020 expressly states that the chapter promotes the health, safety and welfare of the general public and does not create a protected class of persons. Homeowners also argue that the City failed to require a more extensive study of the site, including third-party review. But, SMC 25.09-.080 merely says that the Director "may" require more extensive studies and investigations as well as third-party review. Because the Director has this discretion, we cannot say that he failed to meet his duty. Thus, Homeowners are unable to establish the failure to enforce exception to the public duty doctrine.

C. Special Relationship Exception

 Homeowners argue that they had a special relationship with the City. The special relationship exception applies only when (1) there is direct contact or privity between a public official and the injured plaintiff, (2) the public official gives *express* assurances to the plaintiff, and (3) the plaintiff justifiably relied on assurances he *specifically sought. Pepper*, 73 Wn. App. at 534-35; *see also Williams v. Thurston County*, 100 Wn. App. 330, 333, 997 P.2d 377 (2000) (without evidence of specific inquiries and express assurances, other than a general approval of construction by a public official, there is no special relationship); *Moore v. Wayman*, 85 Wn. App. 710, 718-21, 934 P.2d 707 (1997) (special relationship exception requires evidence of specific inquiries and express assurances). As to their claims for negligent permitting, Homeowners have established none of the requisite elements.

Because the City moved for partial summary judgment only on the negligent permitting claim, we do not address whether the special relationship exception applies to the claim for negligent maintenance of the public storm drain.

### D. Rescue Exception

 At oral argument, Homeowners argued that the rescue exception applies. An issue is not properly before an appellate court if not set forth in the party's brief, even if raised at oral argument. *State v. Johnson*, 119 Wn.2d 167, 170, 829 P.2d 1082 (1992). Because Homeowners failed to assert the rescue exception in its briefing to this Court, we do not reach it.

## III

### Assumption of Risk

Finally, the City contends that the Homeowners assumed the risk of landslides. The City, however, makes this argument only in the context of negligent permitting and not negligent maintenance of the public storm drain. Because we have determined that the public duty doctrine bars the negligent permitting claim, we do not address this issue.

## CONCLUSION

We hold that the Covenant does not bar Homeowners' negligence claims because it fails to touch and concern an estate in land. But, because Homeowners have failed to establish a public duty exception for their negligent permitting claims, only their drainage claim remains an issue following summary judgment.

We reverse and remand.

BECKER, A.C.J., and COLEMAN, J., concur.

After modification, further reconsideration denied December 18, 2000.

Review granted at 143 Wn.2d 1019 (2001).