# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

GERALD C. CLEMENS, as trustee of
The John and Jean Roden Revocable
Trust,

        Appellant/Cross-Respondent,

        v.

PETER VRINCEANU and ELENA
VRINCEANU, a married couple,

        Respondents/Cross-Appellants,

        and

CLIFFORD J. JARREAU and ERIKA L.
JARREAU, a married couple;
CHELSEA WALKER, an unmarried
person, and RYAN BAHM, an
unmarried person; ROBERT C.
MORGAN and DEANNA L. MORGAN,
a married couple; MAHMOUD
GHOFRANI AND SEYEDEHNEGAR
NIROMAND HOSSEINI, a married
couple; ANKIT AWASTHI and SONIKA
SONI, a married couple; NANCY R.
LITTLE, an unmarried person, and
TYLER D. KRISTOVICH, an unmarried
person; KARLEN LIE, an unmarried
person, and THANET RANGARATNA
and ACCARIMA SRIMUANG, a
married couple; RASHIDA ANJUM and
IRSHAD AMJAD, a married couple;
DOUGLAS R. SCHROTH, an
unmarried person; MYRLINO HUFANA
and MARITESS HUFANA, a married
couple; HOWARD P. SNOW and
MOLLY L. SNOW, a married couple;
MIN SUG KONG and CHUNG WON

No. 84399-1-I

DIVISION ONE

UNPUBLISHED OPINION

LEE, a married couple; HOANG INVESTMENTS, LLC, a Washington limited liability company; CHARLES S. TAULBEE, an unmarried person; CHRISTOPHER W. VAN HORNE, an unmarried person; YING CUI, an unmarried person; ANGELA CLARE THAIN, a married person; MARC T. RITTENHOUSE and SHANA N. RITTENHOUSE, a married couple; JONATHAN WILLIAM LAVERING and JING LAVERING, a married couple; DALIBOR VAVREK and GENA E. VAVREK, a married couple; CATALIN V. POPA and CLAUDIA POPA, a married couple; JACH INVESTMENT GROUP LLC, a Washington limited liability company; BENTLEY MAKKAR, an unmarried person, and JASKEERAT SINGH MAKKAR, an unmarried person; WILLAIM S. FINE and MARY L. FINE, a married couple; LEORA M. CLEMANS, an unmarried person; DERRIN M. WATSON and KALI E. WATSON, a married couple; NICHOLAS D. RAVAGNI, an unmarried person; AYUSH CHATURVEDI and ADRIANA IOANA OLARU, a married couple; WELLES HOFFMANN and KARTIN HOFFMAN, a married couple; DEN VAN HUYNH and LACH THI NGUYEN, a married couple; IRVING Y ZHANG, a married person; ROMIT GIRDHAR and GAYATRI WATWE, a married couple; KARINE AGADZHANOVA, an unmarried person; ALAN CHUNG and WAI KUEN FANICA FAN, a married couple; MARY PATRICIA GERGEN, an unmarried person; JEREMY DE SOUZA and NORA DE SOUSA, a married couple; HELEN K. TAYLOR, an unmarried person; REYES CAMINO, an unmarried person; TIFFANI CARL, an unmarried person; MAKSIM SUDZILOUSKI and

SVETLANA SUDZILOUSKAYA, a married couple; CHANG GUO and LAIYA JOY LUBBEN, a married couple; JOHN M. HANSON and SYLVIA F. HANSON, a married couple; JJ ZOU and LINGQING ZOU, a married couple; MARCO S. NAKAYAMA, an unmarried person; JOHN CORRING and EMILY CORRING, a married couple; KEN MANSON, as Personal Representative of the Estate of Beatrice Manson; COLIN LYTEL, an unmarried person; ROBERT A. JOHNSON and LINDA R. JOHNSON, a married couple; MARGRET A. SODERSTROM and ROBERT A. PURDY, JR., a married couple; RONALD J. GRANT, an unmarried person; EVA CSIBA, an unmarried person; RONGJI GUAN and GUANGMEI KE, a married couple; MICHAEL W. SARGENT and STEPHANIE J. SARGENT, a married couple; VINCE F. KAELIN, JR, a married person; JENEE L. HAMILTON, an unmarried person; LIAN JANG, a married person, TAM TIEU, a married person, and SON K. TIEU, an unmarried person; VY THI PHAM and HOANG V. NGUYEN, a married couple; QIAN LI and RUI MA, a married couple; MICHALE MUTH, and JOYANNE WALKER, a married couple; ANINDITA KAR and KAUSHIK SARKAR, a married couple; FA QUIANG TANG, an unmarried person; RICARDO MACIAS TAMEZ and MELISA SALAS SAENZ, a married couple; NITYA NAMBIAR and SNEHITH YENDAL, a married couple; and ALAN S. JEWETT and SUSAN E. JEWETT, a married couple,

Defendants.

3

BIRK, J. — The trial court as factfinder determined that a Bellevue property, which we refer to as "Tract A," is subject to a restrictive covenant prohibiting its development or use for any purpose other than recreation. Gerald Clemens, who owns Tract A in his capacity as trustee, appeals. Peter and Elena Vrinceanu, whose property adjoins Tract A, cross-appeal. They argue the trial court erred by concluding they do not have a right to recreate on Tract A and by quieting title to Tract A in Clemens. Finding no error, we affirm.

I

In September 2020, Clemens filed a complaint to quiet title in a parcel of property in Bellevue. The parcel is Tract A of "Leawood Addition," which was platted in 1959. As shown in Figure 1 below, the text "RESERVED FOR RECREATION" appears on Tract A as it is depicted on the Leawood Addition plat (Plat).



*Figure 1: Plat Excerpt*

Clemens sought to establish legal ownership to Tract A. He also sought a declaration that the Plat did not convey to other Leawood Addition lot owners, whom he named as defendants, the "right to use Tract A for recreational purposes or any other possessory or nonpossessory interests in Tract A." A group of defendants (the Jarreau Defendants) counterclaimed for declarations that "the owner of Tract A . . . may not use Tract A for any purpose other than recreation" and that the Plat "conveys to all owners of lots in Leawood Addition . . . the right to use Tract A for recreational purposes, and that this right runs with the land as an easement, covenant, and/or plat restriction."

The matter proceeded to a bench trial. The trial court determined that Clemens held fee title to Tract A as trustee of the John Roden Irrevocable Spousal Trust, and it quieted title in him. The court also determined that "Tract A is subject to a restrictive covenant requiring that it be limited to recreational use" and "may only be used or developed in a manner consistent with a recreational purpose." It determined further that "[t]he covenant that restricts the manner in which Tract A may be used and/or developed does not confer upon the Defendants a right to use the land." Clemens appeals, and Peter and ElenaVrinceanu, who own a Leawood Addition lot that adjoins Tract A and were among the Jarreau Defendants, cross-appeal.

II

Clemens argues the trial court erred in determining that the "RESERVED FOR RECREATION" plat notation is a restrictive covenant enforceable against him by other Leawood Addition lot owners. We disagree.[1]

"After a trial court has weighed the evidence in a bench trial, appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." Keever & Assocs., Inc. v. Randall, 129 Wn. App. 733, 737, 119 P.3d 926 (2005). "Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." Id. "If that standard is satisfied, we will not substitute our judgment for that of the trial court even though we may have resolved disputed facts differently." Id. We consider all evidence and draw all reasonable inferences in the light most favorable to the factfinder's decision. See Gorman v. Pierce County, 176 Wn. App. 63, 87, 307 P.3d 795 (2013).

In Johnson v. Mt. Baker Park Presbyterian Church, 113 Wash. 458, 465-66, 194 P. 536 (1920), a plat restricted a parcel to residential use, and despite having notice of this together with the original platter's intent to establish a residential development so restricted, the parcel's owner, like Clemens here, argued that because the restriction did not appear on the owner's deed, the owner could put

---

[1] Before trial, Clemens moved for summary judgment, arguing that Tract A is not subject to a covenant limiting its use to recreation as a matter of law. The trial court denied the motion, and Clemens assigns error to that denial. But Clemens does not raise any arguments in support of that assignment of error other than the ones we reject below. Accordingly, for the reasons discussed *infra*, Clemens does not show the trial court erred by denying summary judgment.

6

the parcel to a different use. The court enforced the restriction appearing on the plat. We reach the same conclusion.

A

"Restrictive covenants are enforceable promises relating to the use of land." Viking Props., Inc. v. Holm, 155 Wn.2d 112, 119, 118 P.3d 322 (2005), abrogated on other grounds by Yim v. City of Seattle, 194 Wn.2d 682, 702, 704, 451 P.3d 694 (2019). "The court's primary objective in interpreting restrictive covenants is to determine the intent of the parties." Riss v. Angel, 131 Wn.2d 612, 621, 934 P.2d 669 (1997). "The relevant intent . . . is that of those establishing the covenants." Id. In determining that intent, courts "give covenant language 'its ordinary and common use' and will not construe a term in such a way 'so as to defeat its plain and obvious meaning.' " Wilkinson v. Chiwawa Cmtys. Ass'n, 180 Wn.2d 241, 250, 327 P.3d 614 (2014) (quoting Mains Farm Homeowners Ass'n v. Worthington, 121 Wn.2d 810, 816, 854 P.2d 1072 (1993)). Courts may "look to the surrounding circumstances of the original parties to determine the meaning of specific words and terms used in the covenants." Hollis v. Garwall, Inc., 137 Wn.2d 683, 696, 974 P.2d 836 (1999).

By concluding that Tract A was subject to a restrictive covenant limiting its use to recreation, the trial court impliedly found that the original parties to the covenant intended it to be so. This finding is supported by substantial evidence. There was evidence that on February 3, 1958, before Leawood Addition was platted, William and Pauline Price entered into a contract to sell Ray Shapley, Inc. (RSI) the land that now constitutes Leawood Addition (Price-RSI contract). The

7

same day, the Prices conveyed what would later become Lots 1 and 2 of Block 1 of Leawood Addition to RSI in partial fulfillment of the Price-RSI contract, and about a year later, RSI began placing advertisements in the Seattle Times for "residential lots" or "homesites" in Leawood Addition describing a "recreation area" or "recreational area."

In August 1959, "G. Ray Shapley – President," "Harold T. Shapley – Secretary," the Prices, and a representative of Lincoln First Federal Savings and Loan Association executed and recorded the Plat. The Plat bears RSI's seal, and the notary's acknowledgment indicates that the Shapleys signed the Plat as officers of "[RSI], a Washington Corporation, that executed the within instrument." The Plat designates five blocks with numbered parcels. Tract A is the only parcel identified by a letter. It bears the designation "RESERVED FOR RECREATION," and it is the only lot on the Plat with that designation.

In March 1960, RSI placed a series of advertisements in the Seattle Times for lots in Leawood Addition, which it described as "[a] [p]lanned [s]ubdivision . . . [c]omplete with one acre recreation area."

Viewed in the light most favorable to the trial court's decision, the foregoing evidence supports an enterprise between the Prices and RSI to plat and market Leawood Addition for residential development. The "RESERVED FOR RECREATION" plat notation is unambiguous and supports the enterprise's intent to restrict Tract A to recreational use. Furthermore, a reasonable inference from

the Seattle Times advertisements is that RSI, not only as a party to the Plat[2] but also as owner of two lots that would benefit from the restriction and a contract purchaser with an interest in the remaining lots, understood the plat notation to mean that Tract A would be reserved for recreational use for the benefit of other Leawood Addition lots. Substantial evidence supports that the original covenanting parties—the Prices and RSI—intended via the plat notation to restrict Tract A's use to recreation. This finding supports the conclusion that the plat notation was an enforceable restrictive covenant.

B

Clemens contends the plat notation was not an enforceable covenant for a number of reasons. He first argues, quoting 17 William B. Stoebuck & John W. Weaver, Washington Practice: Real Estate: Property Law § 3.2, at 125 (2d ed. 2004), that " '[a] landowner cannot by himself place a running covenant on his own land, for the same reason that one cannot make a contract with himself or create an easement on his own land.' " But when the Plat was executed with the restriction on the use of Tract A, some of the benefitted lots in Leawood Addition were owned by the Prices, while others were owned by RSI, which also had an interest in other benefitted lots as a contract purchaser under the Price-RSI contract.

---

[2] Clemens asserts that RSI was not a party to the Plat. But a reasonable inference from the notary acknowledgment and RSI's seal on the Plat is that the Shapleys signed on behalf of RSI.

Clemens also argues that the restriction on Tract A had to appear in a declaration of covenants or in a deed to take effect. This argument is without merit. Although a covenant "is often recorded as a declaration of covenants . . . or is set forth as a restriction contained in the deed transferring an interest in the property, . . . [it] may also be contained on the face of [a] subdivision plat." Hollis, 137 Wn.2d at 691.

Next, Clemens relies on Riverview Community Group v. Spencer & Livingston, 181 Wn.2d 888, 337 P.3d 1076 (2014), to argue that there was no enforceable contract. The relevant issue in Riverview was whether a plat identifying a golf course created an equitable covenant limiting use of the at-issue property to a golf course. Id. at 897-98. After recognizing that "words on the face of a plat . . . can establish an equitable covenant limiting the use of land," the court held that there were issues of fact as to whether the words "golf course" on a plat did so under the circumstances. Id. at 897, 899. Clemens points out that one of those circumstances was that the at-issue property was in fact developed into a golf course complex, whereas here, Tract A remains undeveloped. But nothing in Riverview suggests that actual development of the property was determinative. Furthermore, the golf course example is of limited relevance here, where the Plat does not identify a specific amenity like a golf course but instead uses the broader term "recreation," which, as the trial court determined, "can occur on 'undeveloped' land." Riverview does not support reversal.

10

C

Clemens next argues that the Seattle Times advertisements should not have been admitted into evidence. Relying on <u>Hollis</u>, Clemens asserts the advertisements were irrelevant because they were "probative, at most, of the subjective intent of the minority of original Plattors."

<u>Hollis</u> held that courts can consider extrinsic evidence in construing a covenant. 137 Wn.2d at 696. It also held, however, that an affidavit from one of 10 original subdividers calling one party's interpretation of a covenant " 'not true' " was inadmissible because it was "the unilateral and subjective intent of 1 of 10 of the original contracting parties." <u>Id.</u> at 696, 698. But unlike the after-the-fact affidavit in <u>Hollis</u>, the advertisements at issue here were placed shortly before and after execution of the Plat and, thus, were part of the circumstances surrounding the Plat's execution. The real estate contract, the Plat, and the fact of the advertising support the inference that the advertisements reflected the intent of the Price-RSI enterprise. <u>Cf.</u> <u>Thorstad v. Fed. Way Water & Sewer Dist.</u>, 73 Wn. App. 638, 643, 870 P.2d 1046 (1994) ("To determine contracting parties' intent, a court may consider extrinsic evidence, *such as circumstances leading to execution of the agreement and conduct after execution of the agreement*, to declare the meaning of what was written." (emphasis added)).

Clemens also asserts that the advertisements were inadmissible hearsay. But as the trial court recognized, the advertisements were not hearsay to the extent offered to show the intent of the original covenanting parties. This is because they were probative of that intent regardless whether there was, in fact, a recreation

11

area in Leawood Addition. See ER 801(c) (" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); Betts v. Betts, 3 Wn. App. 53, 61, 473 P.2d 403 (1970) (statement that circumstantially indicates a state of mind, regardless of its truth, is not hearsay).

Clemens does not show the trial court erred in admitting or considering the RSI advertisements as evidence of the original parties' intent.

D

Finally, Clemens asserts that even if the plat notation was an enforceable covenant between the original parties, the trial court erred by determining it was a "running" covenant that can be enforced against Clemens by current Leawood Addition lot owners. We disagree.

Where, as here, the covenant at issue is enforceable in equity based on notice of the covenant rather than incorporation in a deed, it will run if, in addition to being enforceable between the original parties, (1) it touches and concerns the land, (2) the original parties intended to bind successors, (3) there is vertical privity, and (4) there is notice of the covenant. See 1515-1519 Lakeview Blvd. Condo. Ass'n v. Apt. Sales Corp., 102 Wn. App. 599, 604, 9 P.3d 879 (2000) (setting forth the elements for  a running real covenant and noting that a running equitable covenant "requires all of the . . . elements [for a real covenant to run] except horizontal privity"), rev'd in part on other grounds, 146 Wn.2d 194, 43 P.3d 1233 (2002); see also Hollis, 137 Wn.2d at 691 ("Where enforceability of a covenant is based, in part, on actual or constructive notice of a restriction, rather than on

incorporation of the restriction in a deed, the covenant is generally considered an equitable [one].").[3]

Clemens does not dispute he had notice of the covenant but asserts it did not run because there is no evidence the original parties intended to bind their successors. But an intent to bind successors can be inferred if a covenant touches and concerns the land, 1515-1519 Lakeview Blvd. Condo. Ass'n, 102 Wn. App. at 605, and a covenant limiting a property's use touches and concerns the land. Hollis, 137 Wn.2d at 692. Furthermore, RSI's advertising is additional evidence the original parties intended to bind their successors. When the Prices later conveyed their remaining interest in Leawood Addition to the assignee of RSI's interest in the Price-RSI contract, Marvin Mohl, the deed stated it was "subject to any . . . encumbrances arising after" February 3, 1958, the date of the Price-RSI contract. The covenant burdening Tract A was one such encumbrance. Deeds conveying the Prices' lots to Mohl now owned by the parties described the properties by reference to the Plat, incorporating "all its contents." Kelly v. W. Seattle Land & Improvement Co., 4 Wash. 194, 197, 29 P. 1054 (1892) (where deed described property according to a recorded plat, "the plat and all its contents became a part of the conveyance, as though it had been incorporated into it").[4]

---

[3] Although the trial court did not specify which type of covenant it determined existed here, "we may affirm a trial court on any proper theory." Yakima Asphalt Paving Co. v. Wash. State Dep't of Transp., 45 Wn. App. 663, 665, 726 P.2d 1021 (1986); cf. Lake Limerick Country Club. v. Hunt Mfg. Homes, Inc., 120 Wn. App. 246, 254, 94 P.3d 295 (2004) (observing that Washington courts generally have not distinguished between real and equitable covenants).

[4] Presented with comparable facts, a court in another state concluded: "The weight of authority supports a holding that equitable servitudes may be created by

Clemens also argues that vertical privity is absent for three reasons, none of which are persuasive. First, Clemens points out that the warranty deed conveying the Prices' interest in Leawood Addition—including Tract A—to Mohl "EXCEPT[ED] all easements, restrictions, and reservations of record." He asserts this language "extinguish[ed] any reservation on Tract A (and vertical privity) going forward." But Clemens provides no analysis or authority to support this assertion, and as Clemens himself later acknowledges, the "exception" in the deed was likely just an exception from title warranties. See 9 THOMPSON ON REAL PROPERTY § 82.14, at 736 (3d Thomas ed. 2011) (observing, with regard to drafting warranty deeds, that "[t]he use of the phrases 'subject to' or 'except' must be approached with caution" and that "the 'except' clause can create ambiguities as to whether the 'except' language creates a technical exception or whether it is merely a limitation on the title warranties"). Also, as discussed, that deed expressly stated it was subject to all encumbrances arising after February 3, 1958. Clemens does not show the trial court erred inasmuch as it was unpersuaded that the covenant burdening Tract A was extinguished when the Prices conveyed Tract A to Mohl.[5]

---

restrictions noted on a plat with reference to which lots are sold." Stracener v. Bailey, 737 S.W.2d 536, 539 (Tenn. Ct. App. 1986) (citing Tallmadge v. E. River Bank, 26 N.Y. 105 (1862); Simpson v. Mikkelsen, 196 Ill. 575, 63 N.E. 1036 (1902); Freeman v. Island Heights Hotel & Improvement Co., 75 N.J. Eq. 491, 72 A. 974 (1909); Williams Realty Co. v. Robey, 175 Md. 532, 2 A.2d 683 (1938)).

[5] Clemens also argues that because Mohl at one point acquired most if not all of the lots comprising Leawood Addition, any covenant created by the Plat was extinguished under the merger doctrine, which "recognizes the principle that 'one cannot have an easement[ or covenant] in one's own property.'" Schlager v. Bellport, 118 Wn. App. 536, 539 & n.3, 76 P.3d 778 (2003) (quoting Radovich v. Nuzhat, 104 Wn. App. 800, 805, 16 P.3d 687 (2001)). But Clemens did not argue merger below. See Wingert v. Yellow Freight Sys., Inc., 146 Wn.2d 841, 853, 50

Second, Clemens argues that because the covenant was never recorded, it was extinguished by a 1973 tax foreclosure of Tract A. This argument lacks merit. Clemens is correct that a restrictive covenant does not survive a tax foreclosure sale unless it was "established of record" prior to the year for which the tax was foreclosed. Former RCW 84.64.460 (1961); City of Olympia v. Palzer, 107 Wn.2d 225, 232, 728 P.2d 135 (1986). But the Plat was recorded in 1959, and the taxes for which Tract A was foreclosed were for 1962. Accordingly, the tax foreclosure did not extinguish the restrictive covenant appearing on the face of the Plat.[6]

Third, Clemens argues that the covenant was extinguished by a 1980 quiet title action in which title to Tract A was quieted in Chris and Cathy Palzer. But Clemens cites no authority for the proposition that a judgment quieting title extinguishes an otherwise enforceable covenant arising from a plat, much less that it does so where, as here, the judgment quieted title based on a theory of adverse possession without any specific reference to the covenant.

Clemens does not establish that the trial court erred by concluding that Tract A is subject to an enforceable covenant restricting its use to recreation.

---

P.3d 256 (2002) (appellate court generally will not consider arguments not raised in the trial court). Even if he had, Washington courts do not favor merger and will not compel it when the parties do not intend for it or when it would be adverse to the interests of the common owner. WT Props., LLC v. Leganieds, LLC, 195 Wn. App. 344, 350, 382 P.3d 31 (2016). The record includes evidence that Mohl also marketed lots in Leawood Addition with reference to a recreational area.

[6] In light of this conclusion and also because title to Tract A was quieted in 1980 as discussed *infra*, we need not reach the Vrinceanus' argument that there is no evidence Tract A was actually foreclosed.

III

In their cross-appeal, the Vrinceanus argue the trial court erred by determining they do not have a right to use Tract A. They point to nothing indicating an intent to grant any interest in Tract A to owners of other parcels. They rely on the trial court's finding of fact 4, stating, "Historic newspaper advertisements reference a recreational area in Leawood." But that finding does not mandate a conclusion that other lot owners have a right to use Tract A. See Johnson, 113 Wash. at 464 (neighboring owners enforcing plat restriction had no interest or easement in burdened parcel). The Vrinceanus also argue that the subdivision statute in effect when the Plat was executed required municipalities to, when deciding whether to approve a plat, "see that appropriate provision is made in the plat . . . for streets and other public ways, parks, and playgrounds." LAWS OF 1951, ch. 195, § 2. But this does not imply a requirement for particular plats to designate particular parks or playgrounds on particular terms. The Vrinceanus point to no evidence that "[t]he [P]lat was created to meet the requirements of the platting statute then in effect," much less that the Plat would not have been approved absent a grant to other lot owners of a right to use Tract A. Cf. Rainier View Ct. Homeowners Ass'n, Inc. v. Zenker, 157 Wn. App. 710, 722-23, 238 P.3d 1217 (2010) (concluding residents of all three phases of a subdivision had the right to use a park located in "Phase I" where a hearing examiner's findings and conclusions demonstrated that without a shared community park, the design for Phase I would not have been approved).

16

In any case, the Vrinceanus' assertion that the trial court should have found that the original parties to the Plat intended not only to restrict Tract A to recreational use *but also* to grant other lot owners the right to use Tract A asks us to reevaluate the evidence and find it more persuasive than the trial court did. We do not do so. See Snyder v. Haynes, 152 Wn. App. 774, 779, 217 P.3d 787 (2009) ("We defer to the trial court's determinations on the persuasiveness of the evidence."); State v. Living Essentials, LLC, 8 Wn. App. 2d 1, 15, 436 P.3d 857 (2019) ("Reviewing courts will not reweigh the evidence . . . on appeal.").

IV

The Vrinceanus also argue the trial court erred by quieting title to Tract A in Clemens, who claimed ownership through mesne conveyances and also based on color of title to vacant and unoccupied land. See RCW 7.28.080 ("Every person having color of title made in good faith to vacant and unoccupied land, who shall pay all taxes legally assessed thereon for seven successive years, he or she shall be deemed and adjudged to be the legal owner of said vacant and unoccupied land to the extent and according to the purport of his or her paper title."). In support, the Vrinceanus refer to the "Restatement of the Case" section of their opening brief. But they do not explain what aspect of their restatement reveals an error on the trial court's part. They do not argue that Tract A, whose "character" the trial court found "has not changed over time," is not vacant and unoccupied. And the record includes evidence that (1) in 1980, title to Tract A was quieted in Chris and Cathy Palzer, husband and wife; (2) in 1993, Cathy Palzer conveyed Tract A, as her separate property, to John and Jean Roden; (3) in 2020, John and

17

Jean Roden conveyed Tract A to Clemens as trustee of the John and Jean Roden Revocable Trust; and (4) in 2021, Clemens, as trustee of the John and Jean Roden Revocable Trust, conveyed Tract A to himself, as trustee of the John Roden Irrevocable Spousal Trust. The record also includes evidence that the Rodens—then Clemens as trustee—continuously paid property taxes on Tract A for more than seven years. The Vrinceanus do not establish that the trial court erred by concluding, under either theory pleaded by Clemens, that he "holds fee title to Tract A in his capacity as trustee of the John Roden Irrevocable Spousal Trust."

We affirm.

_Birk, J._

WE CONCUR:

_Feldman, J._         _Coburn, J._